Case: 1:22-mj-00228
Assigned To : Magistrate Judge Upadhyaya, Moxila A.
Assign. Date : 10/24/2022
Description: Complaint w/ Arrest Warrant

## AMENDED STATEMENT OF FACTS

Your affiant ▓▓▓▓▓▓ is a Special Agent assigned to the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and I am currently assigned as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) Joint Terrorism Task Force (JTTF). In my duties as a Special Agent, my duties include, but are not limited to, investigating cases of domestic and foreign terrorism, counter-prroliferation, drug smuggling, human smuggling, financial crimes, and cyber crimes. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, S.E., in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

According to records obtained through a search warrant which was served on Google LLC, a mobile device associated with DAVID ARREDONDO; Google Identification Number, XXXXXXXX2710; phone number, XXX-XXX-4920; account name, "Click Your Part"; and email, arredondodavidXXX@yahoo.com was present at the U.S. Capitol on January 6, 2021.[1] Google estimates device location by using several sources, including GPS data, information from nearby Wi-Fi access points and from Bluetooth beacons. This location data varies in its accuracy, depending on the source(s) data. As a result, Google assigns a "maps display radius" for each location data point. Thus, where Google estimates that its location data is accurate to within 10 meters, Google assigns a "maps display radius" of 10 meters to the location data point. Finally, Google reports that it's "maps display radius" reflects the actual location of the covered device approximately 68% of the time. In this case, Google location data shows that a device associated with DAVID ARREDONDO; Google Identification Number, XXXXXXXX2710; phone number, XXX-XXX-4920; account name, "Click Your Part"; and email, arredondodavidXXX@yahoo.com was in and around the U.S. Capitol Building during the time of 12:07 P.M. and 3:44 P.M. (approximate), which is during the known timeframe of the Capitol Building riot event on January 6, 2021.

A search of law enforcement and open-source databases identified DAVID ARREDONDO as residing at XXXX Morgan Marie, El Paso, TX 79936 and being associated to cellular phone number XXX-XXX-4920. Specifically, DAVID ARREDONDO listed phone number XXX-XXX-4920 as his home phone number and XXXX Morgan Marie, El Paso, TX as his residence on his Texas Driver's License application.

Law enforcement records checks and open-source research identified S.A. and S.H. as being relatives of DAVID ARREDONDO. Records obtained from Southwest Airlines revealed that DAVID ARREDONDO, S.A. and S.H. traveled together from El Paso, TX, to Washington, D.C. on January 4, 2021, and returned to El Paso on January 8, 2021. Additional records revealed that DAVID ARREDONDO, S.A. and S.H. stayed at a hotel in Washington, D.C., namely the Capitol Hill Hotel. A review of phone toll records received for a phone number belonging to S.A. showed phone calls made to the Capitol Hill hotel. Records received from the Capitol Hill Hotel identify that S.A. booked a hotel room for guests at the Capitol Hill Hotel from January 4, 2021, to January 8, 2021 (the Capitol Hill Hotel is approximately ½ mile from the Capitol Building). Capitol Hill Hotel video surveillance footage showed individuals matching the description of DAVID ARREDONDO, S.A. and S.H. enter the hotel together on January 4, 2021, and depart the hotel on January 6, 2021. A screenshot is included below showing DAVID ARREDONDO exiting the Capitol Hill Hotel on January 6, 2021:

---

[1] The full account numbers and other identifiers are known to your affiant; they are obscured here for the purposes of this public filing.



Additionally, geo-location information obtained from a search warrant served on Google LLC, revealed that a mobile device associated with DAVID ARREDONDO; Google Identification Number, XXXXXXXX2710; phone number, XXX-XXX-4920; account name, "Click Your Part"; and email, arredondodavidXXX@yahoo.com was present at the Capitol Hill hotel from January 4, 2021 to January 8, 2021, and at the approximate times notated on the images above. Records obtained from Yahoo, Inc. indicate that the listed subscriber of the email account arredondodavidXXX@yahoo.com is DAVID ARREDONDO.

In addition to the above images of DAVID ARREDONDO, your affiant has also reviewed images taken from open-source videos and U.S. Capitol surveillance footage that indicate that DAVID ARREDONDO was observed inside and around the U.S. Capitol on January 6, 2021. Agents were able to locate video footage that matches the description of DAVID ARREDONDO, wearing the same clothing that he was wearing as he left the Capitol Hill Hotel in Washington, D.C. on the morning of January 6, making physical contact with a police officer trying to stop rioters from entering the Capitol doors. In the video, DAVID ARREDONDO can be seen grabbing the arm of a police officer who was surrounded by a mob of rioters. A different police officer can be seen being pulled away by the mob and falling to the ground. DAVID ARREDONDO can be seen grabbing the arm of the other police officer who is trying to keep a door to the Capitol shut, and attempting to pull the officer away from the door in an apparent effort to facilitate the entry of other rioters into the Capitol. A screenshot of this video footage is included below:



Additionally, agents were able to locate video footage of DAVID ARREDONDO inside the Capitol on January 6, 2021. The below screenshots are from third-party footage, as well as Capitol surveillance footage (CCTV) recorded on January 6 with red circles indicating the presence of DAVID ARREDONDO. A review of surveillance footage indicates that DAVID ARREDONDO appeared to have stayed inside the Capitol building for just under forty minutes, and entered and exited the building through the east Rotunda Doors.







On March 23, 2022, agents conducted an interview of an individual who knows DAVID ARREDONDO and S.A. personally (hereinafter "Witness 1"). Witness 1 stated Witness 1 has known DAVID ARREDONDO, and S.A. and their sister since childhood. Witness 1 was shown three separate six-panel photo lineups (one included DAVID ARREDONDO, one included S.A., and one included S.H.) Witness 1 positively identified DAVID ARREDONDO and S.A. in their

respective lineups. Although Witness 1 could not identify S.H. in his photo lineup, Witness 1 noted that the person in the number three (3) position of the lineup (S.H.) had the same smile as the sister of DAVID ARREDONDO and S.A., i.e., S.H.'s mother. Witness 1 was able to positively identify DAVID ARREDONDO and S.A. in the surveillance video obtained from the Capitol Hill Hotel. Agent showed Witness 1 less than 2 minutes of video footage of events that occurred at the U.S. Capitol building on January 6, 2021, but Witness 1 was unable to identify anyone on the videos shown at that time.

On April 13, 2022, agent conducted a follow-up interview with Witness 1 and showed eleven (11) additional video clips that contained video surveillance footage of the Capitol building taken on January 6, 2021. Witness 1 was not previously shown this video surveillance footage at Witness 1's prior interview. Witness 1 identified DAVID ARREDONDO on nine (9) of the eleven (11) video clips shown on April 13, 2022. Additionally, Agents showed Witness 1 an open-source video where Witness 1 identified DAVID ARREDONDO at approximately 1:09 minutes of the video. The video is the same video described above, which shows an individual believed to be DAVID ARREDONDO grabbing the arm of a police officer who was securing the entrance to the Capitol building. Agents showed the same video to Witness 1 during the March 23, 2022 interview, and at that time, Witness 1 was unable to identify DAVID ARREDONDO. However, as noted above, during the April 13, 2022 interview, Witness 1 was able to identify DAVID ARREDONDO after Witness 1 viewed additional videos and images of DAVID ARREDONDO that were not previously shown to Witness 1 in the prior interview on March 23, 2022.

Additionally, your affiant has conducted physical surveillance of DAVID ARREDONDO and compared the images above to his own observations of DAVID ARREDONDO as well as images of DAVID ARREDONDO on social media and in DAVID ARREDONDO' driver's license. Your affiant assesses that the person in the images above shown in and around the U.S. Capitol on January 6, 2021, and grabbing the police officer at the Capitol doors, is DAVID ARREDONDO.

Based on the foregoing, your affiant submits that there is probable cause to believe that DAVID ARREDONDO violated 18 U.S.C. § 1752(a)(1) and (2), and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that DAVID ARREDONDO violated 40 U.S.C. § 5104(e)(2)(D), (F) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at

any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress, or (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings; or (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Your our affiant submits there is also probable cause to believe that DAVID ARREDONDO violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Finally, your affiant submits there is probable cause to believe that DAVID ARREDONDO violated 18 U.S.C. § 111(a)(1), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114. Persons designated within Section 1114 include certain federal officers or employees or those assisting them, where such acts involve physical contact with the victim of that assault, while the officer or employee is engaged in or on account of the performance of official duties.

Respectfully submitted,

███████████████████████

HSI Special Agent/FBI Task Force Officer
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 27th day of October 2022.

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE